UNITED STATES, Appellee

v.

Todd E. JAMESON, Lance Corporal
U.S. Marine Corps, Appellant

No. 06-0881

Crim. App. No. 200401438

United States Court of Appeals for the Armed Forces

Argued April 24, 2007

Decided June 21, 2007

RYAN, J., delivered the opinion of the Court, in which ERDMANN and STUCKY, JJ. joined.  EFFRON, C.J., and BAKER, J., filed separate opinions concurring in part and in the result.


<u>Counsel</u>

For Appellant:  Lieutenant <u>Brian L. Mizer</u>, JAGC, USN (argued).

For Appellee:  Major <u>Kevin C. Harris</u>, USMC (argued); <u>Commander Paul LeBlanc</u>, JAGC, USN.


Military Judges:  Jeffrey P. Colwell (arraignment) and P. H. McConnell (trial).

**<u>THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION</u>.**

Judge RYAN delivered the opinion of the Court.

A special court-martial composed of a military judge alone convicted Appellant, contrary to his pleas, of failure to obey an order or regulation and drunken operation of a vehicle, in violation of Articles 92 and 111, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 911 (2000). The sentence adjudged by the court-martial and approved by the convening authority included a bad-conduct discharge, confinement for ninety days, forfeiture of $500.00 pay per month for a period of four months, and a reduction to E-1. In a supplemental action, the convening authority suspended the bad-conduct discharge until the end of Appellant's obligated service, at which time it would be remitted. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings of guilt and approved the sentence. United States v. Jameson, No. NMCCA 200401438 (N-M. Ct. Crim. App. June 26, 2006) (unpublished).

On Appellant's petition, we granted review of the following issues:

    I.   WHETHER THE MILITARY JUDGE ABUSED HIS
         DISCRETION BY NOT ALLOWING DEFENSE COUNSEL
         TO RAISE A MOTION TO SUPPRESS THE RESULTS OF
         APPELLANT'S BLOOD TEST AFTER PLEAS HAD BEEN
         ENTERED.

    II.  WHETHER DEFENSE COUNSEL WAS INEFFECTIVE FOR
         FAILING TO INVESTIGATE THE ISSUE OF CONSENT
         PRIOR TO SUBMISSION OF APPELLANT'S PLEAS AND
         FOR FAILING TO FILE A TIMELY MOTION TO

2

SUPPRESS THE RESULTS OF APPELLANT'S BLOOD-
ALCOHOL TEST.

For the reasons set forth below, we affirm.

## I.   Background

The charges in this case arise from a single-vehicle accident involving Appellant's truck that occurred around 5:00 a.m. on November 10, 2003.  Appellant had been drinking at two different parties from 8:30 p.m. the night before until approximately thirty minutes before the accident.

Appellant arrived at the first party between 7:00 p.m. and 8:00 p.m.  At this party, Appellant consumed beer and Jägermeister.[1]  Around midnight, he went to another party, next door to the first party, and continued to drink vodka and Jägermeister.

Around 5:00 a.m., two Marines found Appellant and another Marine near Appellant's wrecked truck off Snead's Ferry Road on Camp Lejeune.  They called 911 and attempted to aid both Marines.

The military police investigated the accident site.  After looking at the truck, the skid marks, and indentations in the ground, police determined that the truck had swerved to the right, hit a speed limit sign, swerved to the left into a ditch, and then rolled several times before landing right side up.

_____

[1] Jägermeister is a strong, 70-proof, alcoholic beverage flavored with herbs.

Appellant was treated by paramedics and taken to the hospital for continued treatment. Around 10:50 a.m. that morning, after doctors had treated Appellant's medical needs, two investigators, Sgt Bowick and Cpl (now Sgt) Luther, presented Appellant with a form requesting that he consent to a blood draw to determine his blood alcohol content (BAC) by chemical analysis. Sgt Bowick read the form to Appellant and asked Appellant if he understood what had been read to him. Appellant told Sgt Bowick that he understood. Appellant signed the form and blood was drawn from him for the purpose of calculating his BAC. At 11:00 a.m., more than five hours after Appellant was found at the accident scene, Appellant's BAC measured .11.[2]

Appellant made no motions to exclude evidence before trial. In both the opening statement and through cross-examination of the investigators, Appellant's counsel raised the possibility that a third person had been driving the truck. During its case in chief, the prosecution presented evidence regarding the vehicle's trajectory during the crash, Appellant's voluntary,

---

[2] Manual for Courts-Martial, United States pt. IV, para. 35.a.(b)(1)(A)(2005 ed.)(MCM) provides that, for purposes of an Article 111, UCMJ, violation of the blood alcohol limit is the lesser of the limit set by the law of the state where the violation occurred, or the limit in the MCM. The limit in the MCM is .10 grams of alcohol per 100 milliliters of blood. Id. at para. 35.a.(b)(3). The BAC limit under North Carolina law is .08. N.C. Gen. Stat. § 20-138.1(a)(2) (2000).

properly warned admissions to investigators that he had been drinking the night of the accident, and testimony that established that the smell of alcohol was emanating from Appellant at the crash site. The prosecution also proved that Appellant's BAC was beyond the legal limit.

In order to establish the BAC evidence, the prosecution first called Sgt Bowick to establish that Appellant had consented to the blood draw. When trial counsel attempted to admit Appellant's signed consent form into evidence, defense counsel requested an opportunity to voir dire Sgt Bowick. After completing his voir dire, defense counsel objected to both the admission of the document and any subsequent evidence based on the blood draw. Counsel argued that the taking of Appellant's blood was an illegal search and that Appellant could not have consented because, at the time Appellant signed the form, he was in an impaired state from "drugs administered by the hospital, his own suspected intoxication," and his injuries. Defense counsel made no offer of proof regarding any of these allegations, and the record contains no specific medical evidence concerning Appellant's injuries or medical condition.

The military judge asked defense counsel for good cause why the objection to the evidence had not been made before the trial, as required by the military rules of evidence. See Military Rule of Evidence (M.R.E.) 304(d)(2); M.R.E.

311(d)(2)(A).  Defense counsel responded that his only good cause was that he had made two unsuccessful attempts to contact and interview Sgts Bowick and Luther, but had not been able to speak to either of them about the consent form prior to Sgt Bowick's testimony that day.  Defense counsel conceded that he had the medical document showing Appellant's BAC long before the trial began.  Defense counsel also conceded that he had discussed certain aspects of the taking of blood with Appellant.  Defense counsel further conceded that he had never requested assistance from the Government or the military judge in producing either investigator for an interview before trial.

After considering the motion, the military judge determined that defense counsel had not articulated good cause why the motion had not been raised before trial in accordance with M.R.E. 311(d)(2)(A).  The military judge reasoned that the issue would have been apparent to the defense early on, and that defense counsel had not availed himself of assistance available from the Government or the court to aid in his investigation.  Accordingly, the military judge denied the belated request.

The prosecution went on to present evidence regarding the laboratory findings on Appellant's BAC, thereby establishing that his BAC did measure .11 at the time of the blood draw.  Defense counsel presented evidence of Appellant's good military character only.  The military judge found Appellant guilty.

## II.  Analysis

### A.  Good Cause

The question presented is whether the military judge abused his discretion when he determined that trial defense counsel had not shown good cause to make an untimely motion to suppress the results of Appellant's BAC test.  Appellant asserts that good cause was shown because defense counsel made two unsuccessful attempts to contact the witnesses involved in the seizure of the blood sample.  We disagree.

M.R.E. 311(d)(2)(A) requires that motions to suppress evidence "be made by the defense prior to submission of a plea." The general rule is that a failure to make the motion prior to the plea "constitutes a waiver of the motion or objection."  Id. The only exception is if "good cause" is shown by the moving party.  Id.  We review the military judge's evidentiary decision on whether good cause was shown for an abuse of discretion. See, e.g., United States v. Howard, 998 F.2d 42, 52 (2d Cir. 1993) (describing standard of review with respect to a decision under the analogous federal rule as "clear legal error" or "abuse of discretion").

Fed. R. Crim.P. 12(e) is analogous to M.R.E. 311(d)(2). It states, inter alia, that a motion to suppress evidence must be raised before trial or by the deadline set by the trial judge unless good cause is shown.  Id.; see Fed. R. Crim.P.

12(b)(3)(c).  Federal courts have determined that no good cause exists when the defense knew or could have known about the evidence in question before the deadlines imposed under Fed. R. Crim.P. 12.  See, e.g., Howard, 998 F.2d at 52 (finding no good cause when defense counsel could have found out the necessary information by interviewing defendant); United States v. Kessee, 992 F.2d 1001, 1003 (9th Cir. 1993) (finding no good cause when the defense had access to evidence before trial).  We see no reason why the same reasoning should not apply in this Court. See United States v. McCollum, 58 M.J. 323, 341 (C.A.A.F. 2003)(noting that M.R.E. 101 instructs military courts to look to federal rules for guidance); see also M.R.E. 101.

In United States v. Coffin, this Court determined that there was good cause when the government "sandbag[s]" the defense.  25 M.J. 32, 34 n.3 (C.M.A. 1987).  In Coffin, the government told defense counsel that one of the charges against the defendant would be dropped.  Id. at 33.  The evidence for which a motion to suppress would have pertained was relevant only to that charge.  The day before trial, and after the arraignment, the government informed defense counsel that the charge would not be dropped.  At that point, a motion to suppress was untimely.  Because there was a possibility that defense counsel reasonably believed that the charge to which the motion to suppress pertained was dropped, we held that the facts

8

in Coffin constituted good cause for purposes of M.R.E. 311(d)(2).  Id. at 33-34.

Coffin is inapposite to this case.  Here, the military judge fully probed defense counsel's reasons for not making a timely motion to exclude the evidence.  It is apparent from defense counsel's responses that neither the charge, nor the BAC evidence at issue, was a surprise.  The defense counsel knew about the evidence at issue and also knew the general circumstances surrounding Appellant's signing the consent form. Furthermore, the prosecution did nothing to contribute to the defense decision not to file a timely motion to suppress.  While defense counsel alleged that he left messages for the investigators, there is nothing in the record to suggest that Government counsel, or even the investigators, knew of those efforts.  And defense counsel did not request assistance from either the military judge or Government counsel.

Given these facts, and the law in this Court and the federal courts, we conclude that the military judge did not abuse his discretion in determining that there was no good cause under M.R.E. 311(d)(2) to permit the defense's untimely evidentiary challenge.

### B.  Ineffective Assistance of Counsel

Appellant alleges that his trial counsel's failure to file a motion in limine preventing the admission of Appellant's BAC

test rendered him ineffective.  We analyze ineffective assistance of counsel claims under the test outlined by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prove ineffective assistance of counsel, Appellant must show that his trial counsel's performance was deficient and that the deficiency deprived him of a fair trial.  United States v. Garcia, 59 M.J. 447, 450 (C.A.A.F. 2004).  With regard to allegations of ineffective assistance of counsel, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984).  Consistent with this principle, this Court has stated that, "'[w]hen a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion to suppress evidence, an appellant must show that there is a reasonable probability that such a motion would have been meritorious.'"  United States v. McConnell, 55 M.J. 479, 482 (C.A.A.F. 2001) (quoting United States v. Napoleon, 46 M.J. 279, 284 (C.A.A.F. 1997)).  Given this standard, the decisional issue is whether Appellant has carried his burden to show that his counsel would have been successful if he had filed a timely motion preventing the admission of Appellant's BAC test.

Appellant asserts that he would have succeeded at trial on a Fourth Amendment claim to suppress this evidence because his consent to the blood draw was involuntary.  In determining

whether Appellant has a "reasonable probability" of succeeding on this claim, this Court considers the totality of the circumstances surrounding the consent.  See United States v. Wright, 52 M.J. 136, 142 (C.A.A.F. 1999).  As noted by Judge Breyer in another case involving a drunk driving blood draw, "[p]etitioner's mere speculation that a motion to suppress may have proved meritorious is not enough to 'affirmatively prove prejudice.'"  Travasso v. Clark, 162 F. Supp. 2d 1106, 1118 (N.D. Cal. 2001) (citing Strickland, 466 U.S. at 693).

Here, Sgt Bowick testified that he informed Appellant of his right to consent or object to the drawing of blood.  He further testified that he observed Appellant sign the consent form.  At trial, Sgt Bowick authenticated the signed consent form.  To show prejudice under Strickland in the context of this case, it is Appellant who must adduce evidence that his apparent consent was, in fact, involuntary.  McConnell, 55 M.J. at 484.  But there is no evidence in the record that any of the factors marshaled by Appellant's counsel in fact affected Appellant's understanding of his rights or his consent to the blood draw.

We decline to hold as a matter of law that Appellant was incapable of consenting because he had a BAC of .11.  See, e.g., United States v. Lindsey, 158 F. App'x 757, 759 (8th Cir. 2005) (holding that the "'mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent

11

involuntary'") (quoting United States v. Rambo, 789 F.2d 1289, 1297 (8th Cir. 1986)); United States v. Scheets, 188 F.3d 829, 839 (7th Cir. 1999) (holding that "[t]he mere fact that an individual is intoxicated does not render consent involuntary"); United States v. Gay, 774 F.2d 368, 377 (10th Cir. 1985) (reasoning that "[o]ne can be too intoxicated to operate a motor vehicle, but rational enough to understand requests [to consent to a search] and to give plausible explanations").

We are left to compare the bare assertions of counsel that Appellant was either impaired and incapable of consent at the time he consented, or that that his consent was a mere acquiescence to a claim of lawful authority, with Sgt Bowick's trial testimony and the signed consent form. In a similar case, addressing "appellant's word against that of the investigator in possession of a signed acknowledgement form," we reasoned that "[w]ithout more, appellant has failed to show a reasonable probability that a motion to suppress this evidence would have been meritorious." McConnell, 55 M.J. at 482.

Appellant has not met his burden to show a reasonable probability of success on the Fourth Amendment issue. Consequently, Appellant has failed to make the required showing to succeed on his Sixth Amendment ineffective assistance of counsel claim. Id. at 484; see United States v. Del Rosario-Puente, 41 F. App'x 483, 484 (1st Cir. 2002) (holding that

12

"appellant has failed to show that the motion to suppress was likely to succeed" and, therefore, counsel was not ineffective).

## III.  Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Jameson, 06-0881/MC

EFFRON, Chief Judge (concurring in part and in the result):

I concur with Part II.B. of the majority opinion, which rejects Appellant's claim of ineffective assistance of counsel (Issue II).  As noted in the majority opinion, Appellant consented to the blood alcohol test, the voluntariness of his consent is supported by evidence in the record, and the defense has not demonstrated that he had a viable claim that his consent was involuntary.

The same considerations apply with respect to the question of whether the military judge erred in denying trial defense counsel's belated motion to litigate a suppression motion at the court-martial (Issue I).  Although the test for prejudice with respect to any error by the military judge is less burdensome on the defense than the test for prejudice with respect to ineffective assistance of counsel, the difference is not material here.  In light of the state of the record on the issue of consent, Appellant has not demonstrated that he had a viable suppression motion.  Any error by the military judge in addressing defense counsel's belated motion at trial was harmless.  See Article 59(a), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 859(a) (2000).

In that context, we need not reach the issue of whether the military judge erred, particularly in light of United States v. Coffin, 25 M.J. 32, 34 (C.M.A. 1987) (observing that Military Rule of Evidence (M.R.E.) 311(d)(2)(A), regarding belated suppression motions, "should be liberally construed in favor of permitting an accused the right to be heard fully in his defense"), and in the absence of any indication in the record that defense counsel withheld the motion in order to sandbag the prosecution or for any other tactical reason.  Accordingly, with respect to Issue I, I concur in the result.

BAKER, Judge (concurring in part and in the result):

For the reasons stated in the majority opinion and in the Chief Judge's separate opinion, I concur with Part II.B. of the majority opinion and in the result.  Like the Chief Judge, I would not reach the issue of whether the military judge erred by denying defense counsel's tardy suppression motion. However, I think this case is factually distinguishable from United States v. Coffin, 25 M.J. 32 (C.M.A. 1987).  Among other things, Coffin's counsel relied on government representations that it would not bring the charge in question.  Id. at 33.  Here, defense counsel had forty-four days from referral until his arraignment to consider the charge and identify a basis for suppression.  Moreover, Appellant's counsel had the wherewithal to identify the necessary facts before trial, even without access to the law enforcement witnesses, including access to and knowledge gained from his client, as well as potential access to witnesses at the hospital.  Therefore, I find it unnecessary to rely on Coffin or the statement in that opinion that Military Rule of Evidence (M.R.E.) 311(d)(2)(A) "should be liberally construed in favor of permitting an accused the right to be heard fully in his defense."  25 M.J. at 34.

I would not reach Issue I based on the facts of this case. It is clear that defense counsel was flirting with a potential

ineffective assistance claim.  Indeed, the military judge helped

to frame the claim:

> MJ: All right.  And presumably you had -- knew many of the facts that you're alleging regarding voluntariness from speaking to your own client, correct?
>
> DC: Yes, sir, we had discussions concerning certain aspects of that, but --
>
> MJ: And did you ever request any assistance from the government in having these witnesses return your calls or come to your office or anything along those lines?
>
> DC: I did not do that, sir.
>
> MJ: Did you request any assistance from the court along those lines?
>
> DC: I never filed any notice or motion with the court.
>
> MJ: And just to make sure everything is clear, the first time you objected or raised this motion was on the merits today, correct?
>
> DC: Yes, sir, based upon the testimony of Sergeant Bowick.

The military judge might quickly have determined whether counsel

was engaged in a tactical gambit, was providing fallible

representation regarding a claim without merit, or had failed to

timely pursue a credible claim.  Instead, the door was left open

for Appellant to litigate an ineffective assistance claim during

three years of appellate litigation, based on facts and

arguments arguably not fully developed at trial.  For example,

some question remains whether counsel sought to contact

personnel at the hospital who could address Appellant's status

and treatment at the time his consent to draw blood was obtained.

Certainly, as a matter of legal policy it would have been better for the military judge to close and secure the door otherwise left opened. "A military judge can eliminate such a claim merely by giving an accused the opportunity to be heard and, then, after trial, the judge can deal with the attorney who is not abiding by the rules." Id. at 34 n.3. Nonetheless, we need not ultimately decide whether the military judge erred by not closing the door. In the final analysis, and for the reasons stated in the majority opinion, the record as it is demonstrates that Appellant's ineffective assistance claim fails on the basis of the second prong of Strickland v. Washington, 466 U.S. 668 (1984). Accordingly, I concur in the result.