# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND,[1] KRAUSS,[2] and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist COREY W. NORTH**
**United States Army, Appellant**

ARMY 20140268

Headquarters, U.S. Army Fires Center of Excellence and Fort Sill
Gregory A. Gross, Military Judge
Colonel Mark W. Seitsinger, Staff Judge Advocate

For Appellant: Lieutenant Colonel Jason J. Elmore, JA; Major Yolanda McCray Jones, JA.

For Appellee: Major A.G. Courie III.

27 July 2015

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

KRAUSS, Judge:

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of aggravated assault with a dangerous weapon and willful discharge of a firearm in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934 (2012) [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge, confinement for fifteen months, and reduction to the grade of E-1.  The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for fourteen months, and reduction to the grade of E-1.  The convening authority also waived automatic forfeitures of all pay and allowances for a period of six months with direction they be paid to appellant's dependents.

---

[1] Senior Judge LIND took final action in this case prior to her retirement.

[2] Judge KRAUSS took final action in this case prior to his retirement.

This case is before the court for review under Article 66, UCMJ.  Appellant has submitted the case on its merits, but personally raises several additional matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), one of which merits discussion and relief.

**FACTS**

On the evening of 21 July 2013, at appellant's home, appellant sliced or stabbed Specialist (SPC) MC with a large piece of glass, causing deep cuts to SPC MC's neck and back.  Appellant claimed he acted in self-defense because prior to the assault, SPC MC and SPC SB restrained appellant's arms and legs with duct tape.  Specialist SB and SPC MC claimed they did so because appellant was behaving in a violent manner toward SPC MC, as well as trying to harm himself by punching walls and slamming his head into a table.

After assaulting SPC MC, appellant ran out his front door and into his neighborhood.  Specialist SB called 911 and followed SPC MC to the hospital.  Staff Sergeant (SSG) SS, appellant's platoon sergeant, arrived at the hospital and requested that SPC SB take him to appellant's house so he could see what happened.  When they arrived at appellant's house, SSG SS and SPC SB saw appellant standing outside wearing only a pair of shorts, no shirt or shoes.  Appellant was angry, upset, and according to SSG S, "still drunk or hungover."  Staff Sergeant SS calmed appellant down and called the unit first sergeant to inform him that he had located appellant.

At this point, they were in what SSG SS termed a "delayed holding pattern waiting for instructions."  Staff Sergeant SS then asked appellant if he was aware of what had happened and if he was aware of what he had done to SPC MC. Appellant responded that he was aware and "he had wished he'd done it worse [sic]."

The uncontroverted facts in the record reveal that defense counsel first received disclosure of appellant's statement to SSG SS from the government at around 1800 the evening before arraignment.  The next morning, at arraignment, when prompted by the military judge, defense counsel stated: "Sir, other than the previously mentioned multiplicity motion, the defense has no further motions." Trial immediately ensued.

The government called SSG SS and elicited appellant's statement that "he had wished he'd done it worse."  Defense counsel objected, in part, because SSG SS "didn't read [appellant] his rights, he didn't inform him of anything and, therefore, those statements should not be used against the accused at this court-martial."  The following exchange then occurred:

> MJ: "What's the good cause for not filing the motion to
> suppress before arraignment?"

TDC: "Sir, we just – I got this email last night about six'o'clock last night."

MJ: "It would've been a good motion before arraignment. The rule says you do it before arraignment. You didn't tell me anything about this until just now, so . . . Overrruled."

TC: "So, he told you he wish he had done it worse [sic]?"

SSG SS: "Yes."

Trial counsel relied on this statement several times during the rest of the trial, including in his cross examination of the defense expert witness, in his closing statement on findings, and in his sentencing argument.

In cross-examination of the psychiatrist called by appellant, trial counsel used the statement to attack the notion that appellant was acting out of fear rather than malice. In his closing argument, trial counsel referred to this cross-examination and stated that:

And, Major [C], their own expert, said it, a normal person in this situation would not have responded with that. And you also heard what Major C said with regard to what [appellant] said the next morning. He said I know what I've done and I wish I would have caused more harm, or done worse, or words to that effect. And, Major [C] said that sounds like vengeance and that sounds like anger.

Finally, in sentencing argument, trial counsel stated:

And the biggest problem with what occurred, Your Honor, the biggest problem with what he did is reflected upon the same statement that I hit on in the closing; it's a statement that is made the next day. It's not a statement of regret. It's not a—he apologized today. But, after the incident, he's not apologetic and he shows no remorse; he wished he would have done the worse [sic].

## LAW

Military Rule of Evidence [hereinafter Mil. R. Evid.] 304(d)(2)(A) requires that "[m]otions to suppress or objections under. . . Mil. R. Evid. 305 to statements that have been disclosed shall be made by the defense prior to submission of plea." Failure to move or object "constitutes a waiver of the objection." Mil. R. Evid.

3

304(d)(2)(A). The rule further provides that "the defense may not raise the issue at a later time except as permitted by the military judge for good cause shown." Mil R. Evid. 304(d)(2)(A).

"We review the military judge's evidentiary decision on whether good cause was shown for an abuse of discretion." *United States v. Jameson,* 65 M.J. 160, 163 (C.A.A.F. 2007) citing *United States v. Howard,* 998 F.2d 42, 52 (2d Cir. 1993).

## ANALYSIS

We find that under the facts and circumstances of this case, the military judge abused his discretion when he summarily overruled the defense counsel's objection and admitted appellant's statement to SSG SS into evidence.

During the brief discussion on this issue, trial defense counsel told the military judge that he had only received disclosure of appellant's statement the night before at 1800 hours. Without further inquiry or analysis, the military judge simply overruled the objection because defense counsel had not filed a motion prior to arraignment.

We recognize the judge's interest in properly enforcing filing deadlines and the necessity of counsel to strive to adhere to those deadlines. However, the military judge also has a duty to ensure that appellant receives a fair trial and along with that, the "opportunity to be heard in his defense." *United States v. Coffin*, 25 M.J. 32, 33 (C.M.A. 1987) citing *Rock v. Arkansas,* 483 U.S. 44 (1987). While Mil. R. Evid. 304(d)(2)(A) "provides for efficient administration of justice, it should be liberally construed in favor of permitting an accused the right to be heard *fully* in his defense." *Coffin*, 25 M.J. at 34 (emphasis in the original).

"Article 31(b), UCMJ, warnings are required when (1) a person subject to the UCMJ, (2) interrogates or requests any statement, (3) from an accused or person suspected of an offense, and (4) the statements regard the offense of which the person questioned is accused or suspected." *United States v. Jones*, 73 M.J. 357, 361 (C.A.A.F. 2014) citing *United States v. Cohen*, 63 M.J. 45, 49 (C.A.A.F. 2006).

Here, three of these four prongs were already fully addressed on the record prior to the defense counsel's objection. First, SSG SS testified that he was currently on active duty and therefore subject to the UCMJ. *See* Art. 2(a)(1), UCMJ. Second, although he was still collecting information, SSG SS indicated that SPC SB told him that appellant had stabbed SPC MC, and he therefore reasonably suspected appellant of committing a crime under the UCMJ. Finally, appellant's statement was without question in regard to the offense of which he was suspected. Thus, the only real question left for the military judge to determine was whether or not SSG SS interrogated or requested a statement from appellant. This inquiry could have been

accomplished quickly with a few more questions for SSG SS, who was on the stand at the time.

Instead, the military judge allowed an incriminating statement into evidence simply because the defense did not meet the deadline without any further inquiry into the reasons behind that failure or the extent to which the government may have contributed to the problem. *See Jameson*, 65 M.J. at 163. We find the military judge's reflexive application of the rules and his failure to liberally construe the timing requirement of Mil. R. Evid. 304(d)(2)(A) to be an abuse of his discretion. *Coffin*, 25 M.J. at 34.[3]

Because the error is nonconstitutional in nature, we review to determine whether the government has demonstrated that the error did not substantially influence the findings. Considering the factors articulated in *United States v. Kerr*, 51 M.J. 401 (C.A.A.F. 1999), we conclude appellant suffered no prejudice as to findings. At the time appellant struck SPC MC, he was near the front door to his house, SPC MC and SPC SB were behind him, not touching him, and were allowing him to go outside to throw the piece of glass away. While it is not entirely clear how much time had elapsed between the duct-taping incident and the assault, it was not immediate. In the time between the events, appellant was alone in his room, had knocked a television over, went to the kitchen to have a shot of alcohol with SPC MC, and had thrown a bottle against his refrigerator. Moreover, during the actual assault, appellant first struck SPC MC in the neck, causing SPC MC to turn around, holding his neck, when appellant assaulted SPC MC again, this time causing a deep cut in his back. A reasonable person in these circumstances would not have believed death or grievous bodily harm was about to be inflicted on him or her warranting such a violent act of self-defense. R.C.M. 916(e)(1)(A). The government's case was strong and the defense of self-defense weak. Though aggravating, the additional incriminating statement at issue did not contribute significantly to the question of appellant's guilt. Therefore, we hold the error in this case was harmless as to findings. *See Kerr*, 51 M.J. at 405.

---

[3] Appellant also makes an allegation of ineffective assistance of counsel claiming that his trial defense counsel was ineffective for failing to file a motion to suppress in a timely manner. Had the military judge simply heard counsel's belated motion, he could have eliminated this claim and dealt with trial defense counsel's rules violation after trial. *Coffin,* 25 M.J. 32, 34 n.3 (C.M.A. 1987); *see also United States v. Jameson*, 65 M.J. 160, 166 (C.A.A.F. 2007) (Baker, J., concurring in part and in the result)("Certainly, as a matter of legal policy it would have been better for the military judge to close and secure the door otherwise left open.) *Id.* For the reasons described in this opinion, appellant's ineffective assistance of counsel claim fails on the basis of the second prong of *Strickland v. Washington*, 466 U.S. 668 (1984).

However, in light of the damning nature of appellant's expressed desire to inflict greater harm on his victim and the government's reliance on that statement to argue for a severe sentence, we are not convinced that the admission of the statement did not substantially influence the adjudged sentence. *See generally United States v. Sanders*, 67 M.J. 344 (C.A.A.F. 2009). Applying the principles of *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and the factors set forth in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we conclude that we can confidently reassess appellant's sentence without returning this case for a sentence rehearing.

We find a two month reduction in appellant's sentence to confinement cures the error and eliminates any impact the erroneously admitted statement may have had on the military judge's sentence determination.

In evaluating the *Winckelmann* factors, our decision does not result in a change in the penalty landscape because appellant's maximum punishment remains unchanged as a result of our action. *Id.* at 15-16. Because appellant was sentenced by a military judge as opposed to members, we are more likely to be certain of how the military judge would have sentenced appellant had he not considered the erroneously admitted statement. *Id*. at 16. In addition, this court reviews the records of a substantial number of courts-martial involving aggravated assaults, and we have extensive experience with the sentences imposed for such offenses under various circumstances. *Id.* at 16.

Finally, the gravamen of the offenses has not changed, appellant remains convicted of willfully discharging a firearm and a particularly egregious aggravated assault, evidence of which was all still properly before the military judge. *Id.* at 16. In particular, appellant inflicted several deep cuts on SPC MC's neck, one of which was eleven centimeters long and five centimeters deep and located only one or two millimeters from SPC MC's carotid artery. Appellant's second hit on SPC MC caused a deep cut in his back that was eleven and a half centimeters long and two centimeters deep. Specialist MC also had other, smaller cuts, including one on his hand and finger which caused permanent limited range of motion. These injuries resulted in SPC MC having to undergo surgery and spend three days in the hospital. In the end, we are certain the military judge would have sentenced appellant to no less than a bad conduct discharge, confinement for thirteen months and reduction to the grade of E-1. We find such a sentence is correct in law and fact.

**CONCLUSION**

On consideration of the entire record and the submissions by the parties, the findings of guilty are AFFIRMED. Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), we affirm only so much of the sentence as provides for a

6

bad-conduct discharge, confinement for thirteen months and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision, are ordered restored. See UCMJ arts. 58a(b), 58b(c), and 75(a).

Senior Judge LIND and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court