UNITED STATES, Appellee

v.

Kevin D. BROWN, Senior Airman
U.S. Air Force, Appellant

No. 06-0857

Crim. App. No. 36195

United States Court of Appeals for the Armed Forces

Argued April 25, 2007

Decided June 22, 2007

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel


For Appellant:  Captain Christopher L. Ferretti (argued); Lieutenant Colonel Mark R. Strickland and Major Christopher S. Morgan (on brief).

For Appellee:  Captain Nicole P. Wishart (argued); Colonel Gerald R. Bruce and Major Matthew S. Ward (on brief).

Military Judge:  Print R. Maggard.


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Brown, No. 06-0857/AF

Judge BAKER delivered the opinion of the Court.

Appellant was a Senior Airman assigned to the 58th Maintenance Operations Squadron at Kirtland Air Force Base, New Mexico. Before a general court-martial composed of officer and enlisted members, Appellant was tried for ten specifications arising from three charges: willful damage to others' property (three specifications), assault (five specifications), wrongfully communicating a threat and kidnapping in violation of Articles 109, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 909, 928, 934 (2000). Appellant pled guilty to one of the three specifications under Article 109, UCMJ, and was convicted contrary to his pleas regarding one other. Appellant pled not guilty to the five assault specifications but was convicted of one of these offenses. He pled not guilty to both specifications under Article 134, UCMJ, and was found guilty of wrongfully communicating a threat. Appellant was sentenced to a bad-conduct discharge and confinement for twelve months. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed. United States v. Brown, No. ACM 36195, 2006 CCA LEXIS 157, 2006 WL 1976241 (A.F. Ct Crim. App. Jun. 20, 2006).

We granted review of the following issue:

WHETHER APPELLANT'S CONTINGENT DECLARATION CONSTITUTES COMMUNICATING A THREAT.

We conclude that the United States Air Force Court of Criminal Appeals did not err in finding Appellant's declaration a threat under Article 134, UCMJ.  As a result, we affirm.

BACKGROUND

Appellant and Staff Sergeant (SSgt) S were involved in an intermittent, intimate, and often combustible relationship during the two-and-a-half years before Appellant communicated the contested threat.  In July 2003, SSgt S gave birth to a son, the paternity of, and child support for, was often at the heart of the friction between Appellant and SSgt S.

Appellant deployed to Iraq from November 2003 until January 2004.  SSgt S testified that Appellant threatened to kill her during an April 2004 argument in which Appellant expressed indignation over SSgt S's admitted lack of faithfulness to him during his deployment.

Assistant trial counsel asked SSgt S about threats made in the course of the argument:

Q. What did [Appellant] say?

A. He was just going on and on about how he couldn't believe that I did that to him and he said that if he ever saw the guy again that he would kill him and he said that if I wasn't his baby's mother that he would kill me too and a few minutes later he changed it and said that if my son wasn't there then I would be dead

. . . .

Q. Now you mentioned [Appellant's] comment . . . that if you weren't my baby's mom, you would be dead and he changed it later to if the baby wasn't here, you would be dead. How did that comment make you feel?

A. I was scared to death. He had already [been violent] that night and he'd never threaten[ed] to kill me before.

On cross-examination, defense counsel continued to flesh out the context in which Appellant's statements were made:

Q. Now, you mentioned in your testimony that [Appellant] stated to you that, "If I wasn't the baby's mother he would kill you", right?

A. He said, "If I wasn't his baby's mother then I would be dead".

Q. But you are his baby's mother, correct?

A. Yes, I am.

Q. And then he changed his statement to say, "If the baby wasn't here, you'd be dead", correct?

A. Yes, sir.

Q. But the baby was there, is that correct?

A. Yes, sir.

Appellant testified at trial and denied making any threats against SSgt S.  On appeal, he challenges the legal sufficiency of the members' guilty finding, contending the statements, even if made, did not constitute a threat under Article 134, UCMJ.

4

DISCUSSION

We review the legal sufficiency of findings of guilt using the standard developed in Jackson v. Virginia, 443 U.S. 307 (1979); see also United States v. Turner, 25 M.J. 324 (C.M.A. 1987). In Jackson, the Court held that:

> The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

443 U.S. at 318-319 (1979)(citations omitted and emphasis added).

The specification did not delineate the words of the purported threat(s). At trial and again on appeal the Government pointed to two separate alleged threats based upon SSgt S's testimony. First, the Government asserted that Appellant's statement to SSgt S that he would kill her if she was not his baby's mother, was a threat. Second, the Government contended that Appellant's statement that if his son (the baby) was not present then he would kill SSgt S, was a threat. The Court of Criminal Appeals held that the first statement did not "amount to a present determination or intent to wrongfully

5

injure SSgt S." 2006 CCA LEXIS 157, at *7, 2006 WL 1976241, at 4. The Government did not certify an issue regarding this conclusion. As a result, we address only the second statement made by Appellant. See United States v. Adcock, 65 M.J. 18, 21 n.3 (C.A.A.F. 2007); United States v. Lewis, 63 M.J. 405, 412 (C.A.A.F. 2006) (citing United States v. Parker, 62 M.J. 459, 464 (C.A.A.F. 2006)).

The offense of communicating a threat requires the Government to demonstrate beyond a reasonable doubt:

    (1) that the accused communicated certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future;

    (2) that the communication was made known to that person or to a third person;

    (3) that the communication was wrongful; and

    (4) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Manual for Courts-Martial, United States pt. IV, para. 110.b. (2005 ed.) (MCM).

Appellant argues that the second threat does not evince a "present determination" to harm SSgt S. Rather, the threat was explicitly contingent on the absence of Appellant's son, which legally negated its threatening content.

6

In support of this argument Appellant cites United States v. Shropshire, 20 C.M.A. 374, 43 C.M.R. 214 (1971). A confined inmate, Shropshire was restrained when he rattled his handcuffs as a guard came near. The guard said, "Go ahead, Shropshire, reach out and grab me and I'll put you in the hospital." 20 C.M.A. at 375, 43 C.M.R. at 215. Shropshire responded: "I have more muscle in my little finger than you have in your whole body and if you take this restraining gear off, I'll show you what I will do to you." 20 C.M.A. at 374, 43 C.M.R. at 214. The Shropshire Court held that the contingency ("if" the guard removed the prisoner's restraints) indicated a limitation on the detainee's action, a limitation that was solely in the hands of the allegedly threatened guard. Specifically, the Court held, "The words uttered expressed a contingency that neutralized the declaration, since there was not a reasonable possibility the uncertain event would happen . . . [No] reasonable guard would have removed the restraining gear in order to permit an attack on himself." 20 C.M.A. at 375-76, 43 C.M.R. at 215-16.

Appellant claims that these facts parallel his case. In Appellant's view, the threat to kill SSgt S was conditioned on the absence of a 10-month-old infant, and given that the child was being held by SSgt S, in theory that absence could only have come about if SSgt S chose to physically remove her child. Accordingly, the statement was not a threat at all. Much as no

reasonable guard would have acted to remove a threatening prisoner's restraints, no reasonable person would have removed her baby so that she could return to test the veracity of the threatened violence.  According to Appellant, the "contingency . . . neutralized the declaration, since there was not a reasonable possibility the uncertain event would happen." Stropshire, 20 C.M.A.at 376, 43 C.M.R. at 216.

The Government disagrees with Appellant's focus on the presence or absence of a stated contingency in a communication, a proposition for which the Government also relies on Shropshire.  The Shropshire Court cited a concurring opinion in United States v. Humphrys, 7 C.M.A. 306, 22 C.M.R. 96 (1956), in which Judge Latimer placed less emphasis on the grammatical and linguistic structure of threats and contingencies and more on the perceptions of a reasonable person.[1]  Thus, the Shropshire Court noted that a threat exists "so long as the words uttered could cause a reasonable person to believe that he was wrongfully threatened."  Stropshire, 20 C.M.A. at 375, 43 C.M.A. at 215.  The Government also cites United States v. Phillips, in which the Court put the matter more starkly, stating, "Our only

---

[1] We recognize that Humphrys examined the issue of the threatening purpose behind a contested statement rather than the threatening nature of contested language itself.  However, as the Shropshire Court implies and both sides impliedly concede, we find that analyzing whether the purpose behind a statement is threatening requires a similar examination as to assessing whether a statement itself is threatening.

concern is whether a reasonable fact finder could conclude beyond a reasonable doubt that a reasonable person in the recipient's place would perceive the contested statement by appellant to be a threat." 42 M.J. 127, 130 (C.A.A.F. 1995); see also United States v. Cotton, 40 M.J. 93, 95 (C.M.A. 1994).

In this light, the Government argues that Appellant misreads Shropshire, and in particular, misunderstands the role of the guard in that case. For Appellant, the guard in Shropshire was not legally threatened due to the near impossibility of the stated threat from happening. However, for the Government, the impossibility was not conditioned on the words themselves, but rather the circumstances surrounding the use of the words. The prison guard would have had to remove Shropshire's restraints before he could be harmed. Moreover, the guard's initial statement to the inmate indicated that he did not feel physically threatened, at least not as long as Shropshire was restrained. In other words, it was not the literal words spoken that caused it not to be a threat, but rather the surrounding circumstances in which the threat was made.

Thus, in this case, the Government focuses on the fact that unlike the guard in Shropshire, SSgt S was not solely in control of the factors that may have rendered the statement truly threatening. The Government contends that Appellant had the

9

power to remove the infant from SSgt S's arms and take him out of the room so that Appellant could return and consummate his threat. Or, given the infant's age, the child himself could potentially have crawled or walked to another room of his own volition. The Government points to SSgt S's testimony that she became scared to put down her baby and that the only way she felt safe was with her son on her lap. Moreover, the "contingent fact" itself may have been threatening in tone.

Both parties rely on Shropshire, but with too close a focus on certain sentences in the opinion and not enough focus on the overall rationale. Shropshire itself recognizes the very middle ground between text and context that both sides appear to have overlooked. Indeed, even apart from Shropshire, this Court has consistently ruled that examination of threats under Article 134, UCMJ, must pay due regard to any concretely expressed contingency associated with a threat, while remaining aware that all communication takes place within a context that can be determinative of meaning. See, e.g., Cotton, 40 M.J. at 95 ("[b]oth the circumstances of the utterance and the literal language must be considered"); United States v. Gilluly, 13 C.M.A. 458, 461, 32 C.M.R. 458, 461 (1963) ("the surrounding circumstances may so belie or contradict the language of [a seemingly threatening] declaration as to reveal it to be a mere

jest or idle banter"). We reaffirm this long-standing principle today. Context gives meaning to literal statements.

With respect to the specific threat uttered by Shropshire, the Court concluded, "the words uttered expressed a contingency that neutralized the declaration." Shropshire, 20 C.M.A. at 376, 43 C.M.R. at 216. At the same time, the Court concluded that "so long as the words uttered could cause a reasonable person to believe that he was wrongfully threatened" contingent words could communicate a threat under Article 134, UCMJ. 20 C.M.A. at 375, 43 C.M.R. at 215. Thus, the Court indicated "the understanding of the person to whom the statement is communicated and the circumstances of the communication may be significant in contradicting or belying the language of the declaration." Id. We hasten to add that this latter statement cuts both ways.

Consider the following examples. If a drunken, forty-year-old bar patron wields an axe while running around menacingly shouting that if he were twenty years old he would kill a proximate individual, a legalistic analysis of the words of the threat would result in a conclusion that no threat existed. A forty-year old can never be a twenty-year-old and thus the impossible contingency would presumably negate the threat. This, however, is somewhat nonsensical. It belies the fact that the individual is nonetheless behaving and speaking in a

11

threatening manner despite the stated explicit contingency that seemingly limits the forty-year-old's ability to consummate the threat.[2]

That the opposite is true, in which clearly non-contingent threats are not legally threatening, is also plain.  If someone were to approach a putative victim and coldly stare her down while solemnly stating that he was going to kill her within the next five minutes, it would seem that the elements of the offense of communication of a threat would be met in spades.  However, if we learn that the "threatening" individual is a small child with no clear ability to consummate his threat, or if the threatening individual has a history of tantrum threats but has never acted on them, the calculus of the alleged threat changes.  To not engage in such a recalibration in light of present circumstances and past behavior would fail the "straight-face" test.  Francisco v. Comm'r, 370 F.3d 1228, 1231 (D.C. Cir. 2004); see also Humphrys, 7 C.M.A. at 311, 22 C.M.R. at 101 (Latimer, J., concurring) (allegedly threatening language was deemed nonthreatening because, inter alia, witnesses agreed that when the statements were made, the accused was in a highly emotional, almost irrational state); United States v. Davis, 6 C.M.A. 34, 37, 19 C.M.R. 160, 163 (1955)(suggesting the defense

---

[2] We leave aside whether the individual in such a circumstance could also be charged with assault under Article 128, UCMJ.

of "jest" can be available to the charge of making a threatening statement regardless of the explicitly threatening language used in the contested communication); see also United States v. Rutherford, 4 C.M.A. 461, 463, 16 C.M.R. 35, 37 (1954).

The words communicated certainly matter because they are the starting point in analyzing a possible threat. But words are used in context. Divorcing them from their surroundings and their impact on the intended subject is illogical and unnatural. Legal analysis of a threat must take into account both the words used and the surrounding circumstances. Without such a subtle examination absurd results might arise, defeating both the text and purpose of paragraph 110.b. of the Manual for Courts-Martial.

The Nature of the Threat in This Case

In the present context the literal words of the threat consist of Appellant's statement that he would kill SSgt S if his son were not present. As discussed, the impossibility or unlikelihood of this eventuality occurring is uncertain. It is equally unclear exactly who in the exchange had the power to make the contingency occur or prevent it from occurring. Even if one concludes the words themselves are not sufficient to constitute an unlawful threat, the combination of words and circumstances are sufficient.

For example, SSgt S testified that Appellant's statement that he would kill her was new in their exchanges. He "had never said anything like that [before] and the way that he said it . . . made [SSgt S] think that he would kill [her]." Moreover, the statement was made within minutes of a violent outburst by Appellant. The backdrop of significant violent exchanges between Appellant and SSgt S provided further basis for a reasonable person, including SSgt S in particular, to consider the statement threatening.

The record indicates that the history of violence and heated exchanges between the two was substantial:[3]

> In October 2003 SSgt S and Appellant were involved in such a raucous argument at SSgt's apartment that the police were called and SSgt S received a citation from her landlord threatening eviction.

> During the October 2003 exchange, Appellant threw his cell phone against the wall, punched a hole in a door, and grabbed SSgt S's shirt . . . .

> One month prior to the incident in question SSgt S and Appellant had had another exchange which became violent. Appellant punched a hole in SSgt S's door

---

[3] We recognize that Appellant was acquitted of some of the violent acts most proximate to the contested statement (notably the two specifications that alleged he had strangled SSgt S twice immediately prior to making the threatening statement to her), but we note without deciding that the fact that the Government was unable to show Appellant committed these acts beyond a reasonable doubt may not necessarily mean that the acts could not meet a lower standard of proof allowing their use in analyzing their impact on making the surrounding context of a statement threatening. However, even apart from the acts of which he was acquitted, there was enough uncontested history and context to render the threat legally threatening.

and another airman was forced to physically intervene in order to halt further escalation of violence between the two.

Moreover, at the time of the incident Appellant was drinking (and had imbibed an unknown amount) and was convicted of both unlawfully grabbing SSgt S's shoulder, pushing her up against the closet door and refusing to unhand her, ripping SSgt S's shirt, and shattering SSgt S's cell phone by smashing it against the wall. Appellant had also hit the wall of SSgt S's bedroom with such force that a framed picture was dislodged. Appellant seemed unconcerned that shards of glass from the picture landed on his infant son and Appellant subsequently further damaged the fallen picture by picking it up and hitting it against a chair.

Viewing these facts -- the words communicated and the context within which the statement was made -- in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found each element of the offense beyond a reasonable doubt. Appellant expressed an intent to wrongfully injure SSgt S, the statement was made known to SSgt S, the statement was wrongful, and the statement was manifestly prejudicial to the good order and discipline of the armed forces or was of the nature to bring discredit upon the armed forces.

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.