# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, D.C. KING, A.Y. MARKS**
**Appellate Military Judges**

**UNITED STATES OF AMERICA**

v.

**JERAMY L. WHITLEY**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201500060**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 19 July 2014.
**Military Judge:** LtCol David M. Jones, USMC.
**Convening Authority:** Commanding General, Marine Corps Recruit Depot/Eastern Recruiting Region, Parris Island, SC.
**Staff Judge Advocate's Recommendation:** LtCol K.M. Navin, USMC.
**For Appellant:** LT Christopher C. McMahon, JAGC, USN.
**For Appellee:** LCDR Justin C. Henderson, JAGC, USN; Capt Matthew M. Harris, USMC.

**29 March 2016**



---------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

BRUBAKER, Chief Judge:

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of four specifications of conspiracy; one specification of aggravated sexual assault; two specifications of aggravated sexual contact with a child; four specifications of sexual abuse of a child; four specifications of assault consummated by a battery, two of them upon a child under 16 years; two specifications each of possession and production of child pornography; two specifications of child endangerment; one specification of communicating indecent language to a

minor; and one specification of communicating a threat in violation of Articles 81, 120, 120b, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 920, 920b, 928, and 934.

After merging several of the specifications for sentencing purposes, the military judge sentenced the appellant to 40 years' confinement, reduction to pay grade E-1, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority, pursuant to a post-trial agreement, disapproved all confinement in excess of 39 years and nine months, but approved the remainder of the sentence.

The appellant now alleges:

(1)    Legally and factually insufficient evidence to support his convictions for communicating a threat, for aggravated sexual assault and assault of JD, all offenses related to CK and AL , possessing child pornography;

(2)    Improper referral of charges;

(3)    Inappropriately severe sentence;

(4)    Prosecutorial misconduct; and,

(5)    Ineffective assistance of counsel.[1]

We find no error and affirm the previously approved findings and sentence.[2]

**Background**

Evidence at trial demonstrated the appellant's escalating sexual fixation on spanking and sexual sadism. Data recovered from the appellant's electronic devices showed that he deliberately sought out and viewed sexualized depictions of spanking, particularly of female children, many of which constituted child pornography. The evidence also showed a broader sexual interest in injury, domination, and abuse.

The appellant's relationships with his first, second, and third wife were increasingly controlling and violent. The appellant imposed strict rules and expectations on all of his wives and physically punished them when they failed to do as they were told. At first, punishment consisted of spanking the bare buttocks and genital region. In each case, the spanking became more severe over time. Spankings also coincided with rough sex. With his second wife, the rough sex escalated to sexual assault. With his second and third wives, the appellant added

---

[1] All but the allegation of insufficient evidence to sustain the communicating a threat conviction are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[2] We have considered but reject the contention that charges were improperly referred. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992). We discuss the remaining contentions below.

"corner time"[3] as a punishment, making the woman stand still with her face against a wall, underwear pulled down around her knees, her red, welted buttocks exposed.

The appellant's third wife, hereafter Mrs. Whitley, had a ten-year-old daughter, CK, when she started dating the appellant in the spring of 2011.  Early in his relationship with Mrs. Whitley, the appellant took over disciplining CK.  He spanked the child using the same methods he used on his wives: underwear pulled down; buttocks angled up; beating her to tears with a paddle, hairbrush, switch, or the appellant's hand.  CK also was given the same corner time, face against a wall, underwear pulled down to her knees, her reddened, welted buttocks on display.

The appellant would photograph CK's punishments, before, during, and after, also photographing corner time.  When the appellant deployed, Mrs. Whitley took over punishment of CK, under the appellant's direction and control.  He required her to send him the same photos, before, during, and after the spanking. The photos, he told her, were so that he could be sure that CK was being punished enough and that the punishments were being administered properly.

In early 2013, one of the appellant's subordinates had family problems that triggered a social services intervention.  In response, the appellant volunteered to have that Marine's seven-year-old daughter, AL, come live with him in his home.  With her parents' consent, AL moved into the Whitley home.  The appellant quickly subjected AL to the same rules and punishments as CK.  On multiple occasions, the appellant invited AL's mother to his home to witness, and be instructed on, how to "properly" punish AL.  After demonstrating how to spank the child, the appellant then had AL's mother strike her daughter herself.  After one such session, AL's mother broke down and told a friend about the spankings.  That friend's intervention resulted in AL's removal from the Whitley home and a law enforcement investigation.

**Analysis**

I. *Legal and Factual Sufficiency*

The appellant challenges a number of his convictions as legally and factually insufficient. We review questions of legal and factual sufficiency *de novo*.  *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).  The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt."  *United States v. Day*, 66 M.J. 172, 173-74 (C.A.A.F. 2008) (citing *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)).  In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution."  *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt."  *United States v. Rankin*, 63 M.J. 552, 557 (N.M.Ct.Crim.App. 2006) (citing *Turner*, 25 M.J. at 325 and Art. 66(c), UCMJ), *aff'd*, 64 M.J. 348 (C.A.A.F. 2007).  In conducting this unique appellate role, we take "a fresh,

---

[3] Record at 218-19, 363-64.

impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. While this is a high standard, the phrase "beyond a reasonable doubt" does not imply that the evidence must be free from conflict. *Rankin,* 63 M.J. at 557.

### 1. Communicating a Threat

The appellant avers that a statement he made to Gunnery Sergeant (GySgt) JW—"Let someone come try to take my kids away from me, or me from my kids, and I'll be in the garage with my AR-15, waiting," or words to that effect—did not constitute a threat because it was mere venting and was not directed at a specific individual.

The elements of communicating a threat are: (1) that the accused communicated certain language expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future; (2) that the communication was made known to that person or to a third person; (3) that the communication was wrongful; and, (4) that, under the circumstances, the conduct of the appellant was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 110b; *see also United States v. Brown*, 65 M.J. 227, 229 (C.A.A.F. 2007).

The test for whether a statement constitutes a threat includes both an objective and a subjective prong. *United States v. Rapert*, __ M.J. __, No. 15-0476 (C.A.A.F. Mar. 18, 2016). The first element of the offense is measured by an objective standard: would a reasonable person understand the statement as expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future? The third element, on the other hand, is measured by a subjective standard: was the communication wrongful—that is, did the speaker intend the statement "as something other than a joke or idle banter, or intend[] the statement[] to serve something other than an innocent or legitimate purpose"? *Id.*

In making these determinations, we consider not just the statement itself, but the surrounding context. *Brown*, 65 M.J. at 231; *United States v. Phillips*, 42 M.J. 127, 130 (C.A.A.F. 1995). An accused need not actually intend to carry out the threatened injury, but "a declaration made under circumstances which reveal it to be in jest or for an innocent or legitimate purpose, or which contradict the expressed intent to commit the act" is not a threat. MCM, Part IV, ¶ 110c.

A threat need not be directed at a specific individual—it is sufficient if it is directed at a particular group or type of victim. MCM Part IV, ¶ 110(b)(1) (2012); *see United States v. Gilluly*, 13 C.M.A. 458, 460-61 (C.M.A. 1963) (finding a threat to harm "his buddies" at the Officers and Noncommissioned Officers Clubs sufficient to identify the potential victims of the threat); *United States v. Mason*, No. 201300154, 2014 CCA LEXIS 276 at *7, unpublished op. (N.M.Ct.Crim.App. 2014) (*per curiam*), *rev. denied*, 74 M.J. 77 (C.A.A.F. 2014).

The appellant's words convey intent to take violent action against a particular group or type of victim—child protective services or law enforcement—if they attempt to carry out lawful

duties. Contrary to the appellant's assertion, the context of this statement did not contradict this. GySgt JW testified that the appellant appeared "[u]pset, nervous" and "kind of a wreck" during the conversation because he knew he was under criminal investigation and his phone had been seized.[4] His tone was "more serious than our normal conversation tone."[5] While it is true that after the comment, GySgt JW simply verbally corrected the appellant and did not report it to law enforcement, the entire context of the conversation leads us to conclude that the statement was wrongful and that a reasonable person would have believed that the appellant's statement was a threat—regardless of whether the appellant actually intended to carry through with it. We thus find legally and factually sufficient evidence to support this conviction.

### 2. Aggravated Sexual Assault of JD

The appellant argues that his convictions for assault consummated by battery and aggravated sexual assault of JD, one of his ex-wives, are legally and factually insufficient. The appellant admits to the underlying acts, but asserts that the spankings and sexual activity with JD were consensual, and that if they were not, he had a reasonable mistake of fact as to consent.

To support his contention, the appellant selectively cites portions of the record where JD indicated that a significant portion of her sex life over the course of her three-year marriage to the appellant consisted of consensual sex, including at times consensual spanking and restraint of JD. But JD just as clearly testified that there was a stark difference between the "gentle," "fun," consensual sex earlier in their relationship and the painful and sadistic "punishments" providing the basis for the appellant's convictions.[6] As part of her "punishment," the appellant used a hand, spoon, belt, curtain rod, and a special paddle with her name on it to strike JD. He struck her on her bare buttocks, legs, and anus. He struck her with sufficient force to leaves welts and bruising. As the pain the appellant inflicted escalated, JD frantically and tearfully pleaded with the appellant to stop, yet he did not. Eventually, most of the spankings culminated in forceful—sometimes forcible—sexual intercourse. In certain cases, when JD told the appellant something was too painful or asked him to stop, he would respond aggressively and hurt her more.

Under these circumstances, we find legally and factually sufficient evidence that JD did not consent to the charged incidents, and that any purported belief to the contrary was unreasonable.

### 3. All Offenses Related to CK and AL

The appellant also does not dispute the underlying acts with the minor children, CK and AL. He instead avers that he lacked the requisite intent for the sexual offenses—to abuse, humiliate, or degrade the girls, or to arouse or gratify his own sexual desires—and that he merely exercised legal parental discipline.

---

[4] *Id.* at 546.

[5] *Id.* at 548.

[6] *Id.* at 214.

a. *Intent to Abuse, Humiliate, or Degrade, or to Arouse or Gratify Sexual Desire*

For certain offenses,[7] the Government was required to prove that the appellant carried out his acts with the intent to abuse, humiliate, or degrade CK and AL, or to arouse or gratify his own sexual desires. MCM Part IV, ¶ 45 (2007); MCM Part IV, ¶¶ 5, 45b, (2012).

The Government presented overwhelming evidence supporting this element. First, the appellant's intent with CK and AL is evident from his conduct itself. When he spanked CK and AL, he had them remove their pants and underwear and position themselves to prop up their hips to better expose their buttocks and genitalia. He sought excuses to implement his "punishment," shifting his standards and getting ever stricter. He ritualistically spanked the girls using his hand and a number of household implements. He sometimes spread their buttocks apart and talked specifically about striking "the sweet spot" between the girl's anus and vagina.[8] When he was done, he made the girls stand facing a corner or wall, naked from the waist down, displaying their buttocks and the marks the appellant had left on them.

Second, the appellant's intent is demonstrated by the striking similarity of this conduct to his sexual activities with his adult partners, whom he often spanked and disciplined in a nearly identical manner before having forceful, sometimes non-consensual sex. And, finally, his intent is perhaps best illustrated by digital evidence showing that the appellant sought, viewed, and possessed sadistic child pornography focused on spanking. The record contains more than adequate evidence that the appellant's intent was to abuse, humiliate, and degrade CK and AL and to arouse and gratify his own sexual desires.

b. *Parental Discipline*

"A parent may punish a child for wrongdoing and not be guilty of a battery if the punishment is inflicted for the purpose of safeguarding or promoting the child's welfare, and if the punishment thus inflicted is not excessive in view of all the circumstances . . . ." *United States v. Scofield*, 33 M.J. 857, 860 (A.C.M.R. 1991) (citation omitted). But the parental discipline defense "is not without limits." *United States v. Robertson*, 36 M. J. 190, 191 (C.M.A. 1992). A parent or guardian's use of force is justifiable only if: "(a) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his misconduct; and (b) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury, disfigurement, extreme pain or mental distress or gross degradation . . . ." *United States v. Brown*, 26 M.J. 148, 150 (C.M.A. 1988) (quoting Model Penal Code 3.08(1) (A.L.I. 1985)).

Because, as noted above, the accused's purpose or intent was not to safeguard CK and AL, but to abuse, humiliate, and degrade them and arouse and gratify his own sexual desires, he

---

[7] Charge I Specifications 3 and 4 (conspiracy to commit aggravated sexual contact with a child and conspiracy to commit sexual abuse of a child); Charge II Specifications 1 and 2 (aggravated sexual contact with a child); Charge III Specifications 1 and 2 (sexual abuse of a child); and, Additional Charge I Specifications 4 and 5 (sexual abuse of a child).

[8] Record at 280.

is not entitled to the parental discipline defense. The convictions for sexual abuse and battery of CK and AL are legally and factually sufficient.

### 4. Child Pornography

The appellant asserts that the evidence supporting his convictions for possession of child pornography is legally and factually insufficient because the Government failed to prove he actually downloaded or exercised control over any of the child pornography admitted at trial. The appellant bases this on the premise that "[t]he images were found in unallocated space"[9] and thus likens his case to *United States v. Nichlos*, 2014 CCA LEXIS 691, unpublished op. (N.M.Ct.Crim.App.2014), *rev. denied,* 74 M.J. 358 (C.A.A.F. 2015). There, we determined that Nichlos did not possess the digital media during the charged time because the evidence showed that during the entirety of that timeframe, the materials were only present in the unallocated portion of his computer, where Nichlos could not access or control them.

Not so here. Despite some images and videos of child pornography being retrieved from unallocated space of his electronic media, others were stored elsewhere at the time of seizure, such as in the recycle bin on his external hard drive. The evidence further showed that the appellant had access to and control over these items during the charged time periods. The prosecution thus presented legally sufficient evidence and we ourselves are convinced beyond a reasonable doubt of the appellant's guilt.

## II. *Sentence Appropriateness*

The appellant attacks his 40 years of confinement as inappropriately severe. We review the appropriateness of a sentence *de novo*. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We may only approve that part of the sentence which we find should be approved. Art. 66(c), UCMJ; *United States v. Baier*, 60 M.J. 382, 383-84 (C.A.A.F. 2005). This requires "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (internal quotation marks and citations omitted). "Sentence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves," while "clemency involves bestowing mercy"—a power preserved for other authorities. *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

The appellant characterizes his offenses against the children as his "attempt to properly discipline them" and that at worst, he "displayed poor judgment."[10] He concludes: "Considering the fact that there was no penetration involved in any of the alleged incidents and in light of [his] stellar record of service a sentence of 40 years [of] confinement is excessive."[11] We cannot agree. Among other crimes, the appellant physically and sexually assaulted his ex-wife,

---

[9] Appellant's Brief of 26 Aug 2015 at 30.

[10] *Id.*

[11] *Id.* (footnote omitted).

physically and sexually abused two children, produced and possessed child pornography, and communicated indecent language to a minor. These acts—far from mere "poor judgment"— were deliberate, extended over years, were physically and emotionally brutal and caused severe and lasting injury to his victims. While the appellant faced 216 years of maximum confinement, he was adjudged but 40. Having fully considered this offender and his offenses, we do not find this sentence inappropriate.

## III. *Prosecutorial Misconduct*

"Prosecutorial misconduct occurs when trial counsel overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014) (internal quotation marks and citations omitted). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935)).

The appellant lobs a volley of accusations at the trial counsel but fails to produce *evidence* of misconduct. Some of the accusations regurgitate allegations made in a pretrial motion, such as that the trial counsel showed contraband child pornography to civilian witnesses. But when pressed at trial, his counsel offered no details and no evidence to support his assertions and withdrew the motion containing them. The appellant now expands these allegations (for instance, claiming the trial counsel showed child pornography to "*all* of the witnesses who testified at the proceedings"[12])—yet still offers no competent evidence. His supplemental declaration—for which we denied a motion to attach—simply attempted to expand the record with bald allegations cut and pasted into affidavit form. With no showing that he had personal knowledge of these alleged acts, this is not competent evidence. *See United States v. Bush*, 68 M.J. 96, 100-01 (C.A.A.F. 2009); MILITARY RULE OF EVIDENCE 602, Manual for Courts-Martial, United States (2012 ed.) ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Instead, the appellant offers us speculation and innuendo. His allegations of prosecutorial misconduct are wholly unsupported.

## IV. Ineffective *Assistance of Counsel*

As detailed further below, the appellant asserts his trial defense counsel (TDC) were ineffective in a variety of ways. He submitted a declaration in support of his contentions and in response to our order, two of his counsel responded with affidavits addressing specified allegations.

We review claims of ineffective assistance of counsel *de novo*. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015). The appellant has "a high bar" to prevail on such a claim. *Id.* at 371. He must show: (1) that his counsel's performance was deficient, that is, fell below an objective standard of reasonableness; and, (2) that, but for his counsel's deficient performance,

---

[12] Appellant's Brief at 31 (emphasis added).

there is a reasonable probability that the result of the proceeding would have been different. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)).

An appellant must overcome a strong presumption that a counsel's conduct "falls within the wide range of reasonable professional assistance." *United States v. Scott*, 24 M.J. 186, 188 (C.M.A. 1987). This presumption "is rebutted by a showing of specific errors made by defense counsel that were unreasonable under prevailing professional norms." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F. 2005) (citation omitted). "[S]econd-guessing, sweeping generalizations, and hindsight will not suffice." *Id*. Further, "strategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690. "In considering whether an investigation was thorough, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Akbar* at 379-380 (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Even when there is deficient performance, it must be so prejudicial "as to indicate a denial of a fair trial or a trial whose result is unreliable." *Davis*, 60 M.J. at 473 (citation omitted). The appellant must show that but for the deficient performance, there is a reasonable probability that the outcome would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The appellant's sweeping allegations of ineffective assistance are, by and large, marked by a lack of evidence and a lack of specificity as to what should have been produced or presented and how that might have changed the outcome. For all of his allegations, the appellant has failed to demonstrate either deficient performance or prejudice. Applying the principles of *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), no additional fact-finding is necessary to reach this conclusion. We address several of his contentions below.[13]

### 1. Potential Witnesses

The appellant claims that he informed his counsel of seven individuals who "would have contradicted the testimony of many of the prosecution's witnesses and rebutted a great deal of the Government's claims."[14] The TDC's affidavits dispute most of the appellant's contentions, but even were we to resolve them in the appellant's favor, we still find the appellant is not entitled to relief. *Ginn*, 47 M.J. at 248. The proffered testimony—which we will assess at face value despite it being mere proffers rather than *evidence* of what these witnesses would have said—is at best of tenuous probity. We need not address each witness in detail but provide as an example one woman whom the appellant asserts would have testified that she and the appellant engaged in consensual "S&M-type sexual activity."[15] It is hardly unreasonable for a counsel to dismiss such potential evidence, if indeed they did, as not likely admissible and just as likely to harm the defense as help—it would offer yet more evidence of the sexual arousal the appellant derives from sadistic behavior, a key point for prosecutors in proving that the appellant's abuse

---

[13] Having carefully considered the remaining contentions, we find them without merit. *Clifton*, 35 M.J. at 81-82.

[14] Appellant's Brief at 35.

[15] *Id.*

of children was for his sexual gratification. Likewise with the remaining listed witnesses, we find that the appellant has failed to establish inadequate investigation or otherwise deficient performance by counsel, let alone a reasonable probability that the outcome of the trial would have been different had his TDC pursued the potential testimony.

### 2. Not Filing Motion for Unlawful Command Influence

The appellant asserts his counsel were ineffective for failing to make a motion alleging unlawful command influence by command members. When an appellant premises a claim of ineffective assistance of counsel on a failure to make a motion, he must show that there is a reasonable probability that the motion would have succeeded. *United States v. Jameson*, 65 M.J. 160, 163-64 (C.A.A.F. 2007).

The appellant alleges in his brief—and repeats in his declaration—that members of his command informed his neighbors of the accusations against him, and instructed members of his company to stay away from him and his family. But he offers no *evidence* to support these bald assertions—no statements from witnesses who observed this, no indication that he had personal knowledge or observation of this himself. He also offers no hint as to how prospective witnesses or members may have been influenced by these supposed command actions. On this scant record, we find that the appellant has failed to carry his burden that the motion had a reasonable probability of success or, even if it had, that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693-94.

### 3. Not Producing Evidence of Prosecutorial Misconduct

The appellant next frames his prosecutorial misconduct argument in a different light, asserting that one of his earlier counsel was ineffective for failing to produce evidence of misconduct when pressed by the military judge. We do find it reckless that this subsequently-released civilian defense counsel made such allegations while apparently lacking the ability or willingness to back them up with evidence. Yet this contention fails for the same reason the allegation of prosecutorial misconduct fails: there is no evidence of it. *See* Part III, *supra*. In the absence of a particularized showing of specific evidence his counsel failed to produce, we are left in the same position as the military judge, who found allusions to unethical behavior and prosecutorial misconduct "*completely unsubstantiated* and without merit."[16] The appellant has failed to carry his burden to show either that failing to produce evidence was deficient or that production of particular evidence would have been reasonably likely to change the outcome of the trial.

### 4. Withdrawing Motion for Improper Referral

The appellant asserts his counsel were ineffective for withdrawing a motion to dismiss on the grounds of improper referral. But as noted *supra*, footnote 2, we find no merit to the contention that charges were improperly referred. There is thus no reasonable probability the motion would have succeeded. *Jameson*, 65 M.J. at 163-64.

---

[16] Appellate Exhibit XXXVI at 11.

5. Abridgement of Right to Testify

The appellant claims that despite his "strong desire" to testify, his counsel "prevented him from doing so."[17] The right of an accused to testify is constitutionally protected, and while a defense counsel may strongly urge him not to do so, "[t]he choice belongs exclusively to the accused, rather than to his lawyer." *United States v. Belizaire*, 24 M.J. 183, 185 (C.M.A. 1987).

To support his assertion, the appellant offers this brief recitation:

For several months prior to trial, [my counsel] told me that they would prepare me for taking the stand. However, this never happened. Instead, Mr. Crisp told me that I should not testify. In response to my pleadings, Mr. Crisp told me that even if I took the stand I would only testify for, at most, thirty minutes. However, it is very likely that if I had testified on my own behalf I would have been found not guilty of many, if not all, of the charges in this case.[18]

In their affidavits, the TDC indicated that they repeatedly advised the appellant of his right to testify and that whatever their advice, it was his decision. They conceded that they advised him not to testify, explaining that their assessment was that (1) his explanations were incredible, did not explain his actions, and would likely be taken against him should the case proceed to sentencing; (2) he "came across very creepy and defensive" when attempting to explain "his belief in corporal punishment and how what he did was normal";[19] and, (3) he would not respond well to aggressive cross-examination.

While these would appear to be competing affidavits, we find no factual dispute necessitating further fact-finding. It is uncontroverted that the appellant was aware of his right to testify. And while the appellant makes the conclusory statement that his counsel "prevented" him from testifying, he provides no factual basis for the assertion, instead indicating his counsel "told me that I *should* not testify."[20] Nothing contradicts TDCs' assertions that they ensured the appellant was aware that the right to testify was his personal choice and that they only made recommendations, even if strongly felt. Purported advice about how long they expected him to testify should he do so does nothing to change this. We are thus able to decide based on the "appellate filings and the record," *Ginn*, 47 M.J. at 248, that the appellant has not established deficient performance or that he was deprived of a right. *Cf. United States v. Dewrell*, 52 M.J. 601, 614-615 (A.F.Ct.Crim.App.1999).

---

[17] Appellant's Brief at 40.

[18] Appellant's Motion to Attach filed on 26 Aug 2015, Appellant's Declaration of 24 Aug 15 at ¶ 20.

[19] Government's Motion for Leave to File Amended Response to Court Order of 3 Feb 2016, Mr. Crisp's Amended Affidavit of 17 Feb 16 at 3.

[20] Appellant's Declaration of 24 Aug 15 at ¶ 20 (emphasis added).

**Conclusion**

The findings and the sentence as approved by the convening authority are affirmed.

Senior Judge KING and Judge MARKS concur in the opinion.

For the Court



R.H. TROIDL
Clerk of Court