# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

### No. ACM 24066

———————————

### UNITED STATES
*Appellee*

**v.**

### Zechariah S. HUGHES
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 6 February 2026

———————————

*Military Judge*: Julie L. Pitvorec (pretrial motion); David M. Cisek.

*Sentence*: Sentence adjudged 17 April 2024 by SpCM convened at Dyess Air Force Base, Texas. Sentence entered by military judge on 14 May 2024: Reduction to E-3 and a reprimand.

*For Appellant*: Lieutenant Colonel Jarett Merk, USAF; Captain Joyclin N. Webster, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Major Vanessa Bairos, USAF; Major Kate E. Lee, USAF; Major Jocelyn Q. Wright, USAF; Captain Donnell D. Wright, USAF; Mary Ellen Payne, Esquire.

Before GRUEN, KEARLEY, and MORGAN, *Appellate Military Judges*.

Senior Judge GRUEN delivered the opinion of the court, in which Judge KEARLEY and Judge MORGAN joined.

———————————

---

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), pursuant to the *Manual for Courts-Martial, United States* (2024 ed).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

GRUEN, Senior Judge:

A military judge sitting as a special court-martial convicted Appellant, contrary to his pleas, of one specification of communicating a threat, in violation of Article 115, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 915.[2,3] The military judge sentenced Appellant to reduction to the grade of E-3 and a reprimand. The convening authority took no action on the findings or sentence. Appellant did not request any deferment of reduction in grade.

Appellant asserts one issue: whether Appellant's conviction for communicating a threat is legally and factually sufficient. We find that even though a complete review of the record supports factual sufficiency of the conviction, Appellant did not meet a specific showing of a deficiency in proof for a full factual sufficiency review. We find Appellant's conviction for communicating a threat in violation of Article 115, UCMJ, legally and factually sufficient and affirm the findings of guilty and the sentence.

## I. BACKGROUND

CK testified that he met Appellant when they worked in the same shop at Dyess Air Force Base (AFB), Texas. They shared an office from 2019 to 2021, and then again from the summer of 2022 until CK left Dyess AFB in 2023. Sometime around September 2022, CK and Appellant started working on the same shift. CK stated he and Appellant worked on different sides of the same office and "stuck to" their respective sides having not much interaction. CK was a staff sergeant and therefore senior to Appellant in rank at that time. When asked by trial counsel, "do you recall correcting [Appellant] and him having a negative reaction," CK responded,

> I do remember having to tell him to get [off] his phone, everyone
> else in the office on his shop was out doing work, and there was
> a big push in our office about not being on our phones, you know,
> when you were inside. It didn't look good. I didn't like that. I

_____

[2] Unless otherwise noted, all references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant was acquitted of three specifications of dereliction of duty in violation of Article 92, UCMJ, 10 U.S.C. § 892; and one specification of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928.

remember correcting and telling him he had to get off his phone, and he did have a negative reaction.

Trial counsel then asked CK, "what was that reaction," to which CK responded,

So, he said something to the effect, again, it's been quite a while, so I don't remember verbatim, but something to the effect of that he was going to "F[**]k me up."

. . . .

[H]he was on the other side of the desk or other side of the office from where I was at.

Trial counsel continued to ask CK, "[A]fter you told [Appellant] to get off his phone, did you stay in that same location?" CK responded,

I believe I just sat back down, or I might have walked out, but I don't really remember.

CK testified he was facing Appellant's general direction when Appellant made the threatening statement. Although he did not remember seeing the words come out of Appellant's mouth, he knew it was Appellant who made the remark because Appellant "has a very distinctive voice." CK could not remember who else was in the shop at that time, but felt like there were others there. When trial counsel asked CK how he felt after Appellant made the threatening statement, CK responded,

I mean, frustrated, upset. A little worried that he could have done it, but, you know, my world didn't come crashing down or anything like that.

On cross-examination, trial defense counsel asked CK if he was "terrified of [Appellant]" after what Appellant said to him, to which CK replied,

Not necessarily terrified. . . . I wasn't anymore mortified than [if] some random person on the street said something the same.

. . . .

I took it as a threat; however, do I think that he would do it? I have, again, I could see him doing it at the same point, not.

On re-direct, trial counsel asked if CK believed Appellant "could have acted on th[e] threat," to which CK responded, "Yes."

The Government also called JN, an Airman at the time of the offense and the same rank as Appellant, who testified to the relevant charge. JN testified that during the charged time frame he worked in the "same shop" with Appellant "almost every day," and that Appellant was "difficult" to work with. JN

also testified regarding an incident between [Appellant] and CK. Regarding this incident, JN recalled:

> supervision had came in [to the office] and saw that people -- had their feet -- on the tables and they were on their phones. They were told not to do that. As soon as supervision left, [Appellant] put his feet back on the table. [CK] told [Appellant] not to. [CK] left the room and then [Appellant] said, "If he tells me what to do again, I'm going to beat his ass."

JN further testified that Appellant said this as CK "was walking out of the office."

On cross-examination, JN confirmed Appellant made the threatening statement "as [CK] was walking out of [the room]," not after CK left the room. JN did not recall this being said to anyone in particular, but that Appellant "just said it aloud in the room." JN did not recall who specifically was in the shop when this statement was made, but that "it was the rest of the shop at the time."

Appellant was convicted of the Specification of the Additional Charge, which reads as follows:

> In that [Appellant] . . . did, between on or about 1 September 2022 and on or about 31 December 2022, wrongfully communicate to [JN] a threat to injure [CK] by stating he would "f[**]k him up," or word[s] to that effect.

## II. DISCUSSION

Appellant argues that his conviction for communicating a threat is legally insufficient because the Government failed to establish any evidence that Appellant's statement was wrongful. Appellant further argues that his conviction is factually insufficient because the Government did not prove each element beyond a reasonable doubt. Specifically, Appellant asserts: (1) that "the only two witnesses the [G]overnment could provide disagreed on the language that was said;" (2) that "the [G]overnment failed to establish beyond a reasonable doubt that the charged language was indeed said to JN;" and (3) that with regard to the "wrongfulness element, again the [G]overnment presented no evidence." We do not agree with Appellant that the Government failed to establish any evidence that Appellant's statement was wrongful. While we agree the testimony given at trial specific to proving the Specification of the Additional Charge by the two witnesses, JN and CK, provided different versions of the threatening language, we note that the specification included the caveat "or word[s] to that effect." We do not agree that the Government failed to establish beyond a reasonable doubt that the charged language was indeed said to JN or

4

that with regard to the wrongfulness element they failed to establish all elements beyond a reasonable doubt.

**A. Law**

We review issues of legal sufficiency de novo. *United States v. Harrington*, 83 M.J. 408, 414 (C.A.A.F. 2023) (citing *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

Our assessment of legal sufficiency is limited to the evidence produced at trial. *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). As a result, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted). "[T]he [G]overnment is free to meet its burden of proof with circumstantial evidence." *Id.* (citations omitted). "The term reasonable doubt, however, does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "This deferential standard impinges upon the factfinder's discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *United States v. Mendoza*, 85 M.J. 213, 217 (C.A.A.F. 2024) (internal quotation marks and citation omitted).

We review questions of factual sufficiency when an appellant asserts an assignment of error and shows a specific deficiency of proof. *United States v. Harvey*, 85 M.J. 127, 130 (C.A.A.F. 2024) (citing Article 66(d)(1)(B)(i), UCMJ, 10 U.S.C. § 866(d)(1)(B)(i), *Manual for Courts-Martial, United States* (2024 ed.) (2024 *MCM*)). The current version of Article 66(d)(1)(B), UCMJ, states:

(B) FACTUAL SUFFICIENCY REVIEW.

(i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon a request of the accused if the accused makes a specific showing of a deficiency of proof.

(ii) After an accused has made a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

> (I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

> (II) appropriate deference to findings of fact entered into the record by the military judge.

> (iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding.

10 U.S.C. § 866(d)(1)(B) (2024 *MCM*).

In the Specification of the Additional Charge, Appellant was convicted of communicating a threat in violation of Article 115, UCMJ, which required the Government to prove the following three elements beyond a reasonable doubt: (1) that Appellant communicated certain language, to wit: he would "f[**]k him up," or words to that effect, expressing a present determination or intent to injure CK presently or in the future; (2) that the communication was made known to CK or a third person; and (3) that the communication was wrongful. *See Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 53.b.(1)((a)–(c).

For this offense, "threat"

> means an expressed present determination or intent to kill, injure, or intimidate a person or to damage or destroy certain property presently or in the future. The communication must be one that a reasonable person would understand as expressing a present determination or intent to wrongfully injure the person, property, or reputation of another person, presently or in the future. Proof that the accused intended to kill, injure, intimidate, damage, or destroy is not required.

*Id.* A communication is "wrongful" if the accused transmitted it "for the purpose of issuing a threat or with the knowledge that it would be viewed as a threat." *Id.* at ¶ 53.c.(2). A communication is not "wrongful" if it is made under circumstances that "reveal it to be in jest or for an innocent or legitimate purpose that contradicts the expressed intent to commit the act." *Id.*

The offense of communicating a threat has both an objective and a subjective standard. *Harrington*, 83 M.J. at 414. Whether the words spoken were "threatening" is judged from the objective perspective from the viewpoint of a "reasonable person in the recipient's place." *Id.* (emphasis and citation omitted). The wrongfulness element is viewed from the subjective perspective of the speaker. *Id.* (citation omitted). In assessing the wrongfulness of the speaker's intent, "the surrounding circumstances may so belie or contradict the language

of the declaration as to reveal it to be a mere jest or idle banter." *United States v. Gilluly*, 32 C.M.R. 458, 461 (C.M.A. 1963) (citation omitted). "A statement made under such circumstances . . . is not wrongful." *MCM*, pt. IV, ¶ 53.c.(2). In reviewing communicating a threat cases, context matters and words should not be considered in a vacuum. *United States v. Brown*, 65 M.J. 227, 231 (C.A.A.F. 2007) ("Context gives meaning to literal statements.").

**B. Analysis**

There are sufficient facts in the record to support a finding that Appellant made a threatening statement to injure CK, which was heard by JN. This case was litigated before a military judge alone. We cannot be certain as to the specifics regarding the military judge's thought process when he made his determinations in findings regarding Appellant's guilt. However, before the military judge deliberated and came to his findings, trial defense counsel raised and litigated a motion for a finding of not guilty pursuant to Rule for Courts Martial 917, to all charges and specifications. With respect to the Specification of the Additional Charge, the military judge stated, when issuing his ruling denying the motion, "[T]here has been witness testimony that [Appellant] made the alleged comments after being told to get off his phone and take his feet down." The military judge further stated, "[T]here has been some evidence presented that [Appellant] transmitted that communication for the purpose of issuing a threat or with the knowledge that it would be viewed as a threat." We agree with the military judge and further find that Appellant made the threat to injure CK in a room where co-workers were present, to include JN, and that JN heard Appellant make the threatening comment directed at CK.

We find it of no consequence that CK remembered Appellant say "something to the effect of that he was going to 'f**]k [him] up,'" and JN remembered Appellant saying "if [CK] tells me what to do again, I'm going to beat his ass." Not only did the charged offense include the caveat "or word[s] to that effect," but both statements communicate effectively the same threat made to everyone present to hear, to include JN, expressing a present determination or intent to injure CK presently or in the future—such threat being made by Appellant. Additionally, we find it of no consequence that JN remembered the threat being conditioned upon "if [CK] [were to tell] [Appellant] what to do again." Our superior court made clear in *United States v. Phillips*, 42 M.J. 127, 131 (C.A.A.F. 1995), that a threat is not negated when the condition imposed on the threat is reasonably possible of being fulfilled. It is only "[i]f the threatened injury is stated to be contingent on the occurrence of some event that obviously could not take place [that] an accused is not criminally liable." *United States v. Alford*, 34 M.J. 150, 152 (C.M.A. 1992). Obviously CK very well could have told Appellant, again, to take his feet off of his desk, or to get off of his cell phone, or any other number of corrective directives given the circumstances in

the shop on the day in issue. More importantly, viewing the evidence in the light most favorable to the Prosecution, CK testified to a threat which was not conditioned on a future event and JN's recollection of a threat with slightly different wording serves to corroborate the threat was made. Under legal sufficiency's deferential standard, the testimony of CK regarding a threat not contingent on any future event is sufficient. *See Robinson*, 77 M.J. at 297–98 (citation omitted).

Additionally, we know from the testimony of CK and JN that the communication was made known to CK and at least one third person, JN. The record further supports the fact that Appellant transmitted the statement "for the purpose of issuing a threat or with the knowledge that it would be viewed as a threat." *See MCM*, pt. IV, ¶ 53.c.(2). CK testified that the statement made him "frustrated," "upset," and "a little worried [Appellant] could have done it." Appellant was described as surly and defiant at the time he made the threatening comment and there are no facts to support the contention that Appellant made the statement under circumstances that "reveal it to be in jest or for an innocent or legitimate purpose that contradicts the expressed intent to commit the act." *Id*. Because Appellant directed the threatening communication towards those in the shop, to include JN and CK, we find that an objective observer in JN's place would have perceived Appellant's words and body language as a threat to "f[**]k [CK] up" or "beat [CK's] ass." We also conclude that, under the totality of the circumstances, Appellant intended his communication to be perceived by those hearing the communication as a threat.

As to legal sufficiency, we find that after viewing the evidence in the light most favorable to the Prosecution and drawing all reasonable inferences, a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98 (citation omitted).

As to factual sufficiency, we do not find that Appellant has made a sufficient showing of a deficiency in proof for the offense. Appellant's contentions that "the only two witnesses the [G]overnment could provide disagreed on the language that was said;" that "the [G]overnment failed to establish beyond a reasonable doubt that the charged language was indeed said to JN;" and that with regard to the "wrongfulness element, again the [G]overnment presented no evidence" do not amount to a specific showing of a deficiency of proof because there is no merit to these contentions. Per *Harvey*, unless Appellant makes both an assertion of error and a specific showing of a deficiency in proof, this court is not permitted to review the factual sufficiency of the evidence. We agree with our sister court that "a general disagreement with a verdict falls short of a specific showing of a deficiency in proof, and thus will not trigger a full factual sufficiency analysis." *United States v. Valencia*, 85 M.J. 529, 535 (N.M. Ct. Crim. App. 2024), *aff'd*, 2025 CAAF LEXIS 966 (C.A.A.F. 24 Nov.

2025). Further, minor inconsistencies in the witnesses' testimony do not establish a specific deficiency in proof. *United States v. Brassfield*, 85 M.J. 523, 528 (A. Ct. Crim. App. 2024), *rev. denied*, 2025 CAAF LEXIS 271 (C.A.A.F. 11 Apr. 2025). Here we considered the minor inconsistencies in the testimonies of CK and JN and conclude such inconsistencies do not establish a specific deficiency of proof. We further conclude that the evidence in the record supports that the charged language was said to multiple persons in the office, to include JN, and that there was sufficient evidence supporting the wrongfulness element. Even assuming Appellant had made a sufficient showing of a deficiency in proof for the offense of communicating a threat against CK, we are clearly convinced the weight of the evidence proved his guilt beyond a reasonable doubt.

## III. CONCLUSION

The findings as entered are correct in law and fact. Article 66(d), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(d) (2024 *MCM*). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court